UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

ENTERED
SEP 29 2000
SAMUEL L. KAY, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia

CHRISTINA WALKER-HARRAH,

Plaintiff

v. CIVIL ACTION NO. 2:97-1265

LIBERTY MUTUAL INSURANCE COMPANY,

Defendant

MEMORANDUM ORDER

This matter is before the court on the motion of plaintiff for summary judgment, filed April 2, 1998, and on the motion of plaintiff for sanctions, filed November 18, 1998.

## I. Background

On July 16, 1997, plaintiff was a passenger in a vehicle being driven by her husband, Douglas Harrah, along West Virginia Route 33 in Scott Depot, West Virginia, when their vehicle struck a horse standing in the middle of the road. (Complaint at ¶ 4). Plaintiff alleges that she suffered severe disabling personal injuries as a result of this accident. (Id. at ¶ 5).

Prior to this accident, plaintiff and her husband maintained both an automobile liability and homeowners insurance policy with defendant. (Affidavit of Douglas Harrah at ¶¶ 3, 4). Following the purchase of their home and birth of their child, the Harrahs became concerned that their existing insurance coverage was inadequate to protect their assets. (Id. at ¶ 7). Accordingly, the Harrahs approached defendant, through its agent, David Ennis, to increase their insurance coverage. (Id. at ¶ 8). At the time, the Harrahs had an automobile insurance policy with defendant which had single limits of liability coverage of $300,000 per occurrence and split limits of uninsured/ underinsured motorist coverage of $50,000 per person/$100,000 per occurrence. (Id. at ¶ 6).

After meeting with Mr. Ennis, the Harrahs decided to purchase a personal catastrophe liability policy, commonly referred to as an umbrella policy, to provide them with additional asset protection beyond that afforded by their automobile and homeowners policies. (Id. at ¶ 7). To do so, the Harrahs were required to increase the single limits of liability coverage under their automobile insurance policy from $300,000 to

$500,000.[1] (Id. at ¶ 9). The Harrahs agreed to do so and the $500,000 liability limits policy was issued on September 14, 1996, in order to enable them to purchase the umbrella policy. (Id.).

On April 27, 1997, defendant renewed the September 14, 1996, automobile insurance policy, number A02-288-404915-007, insuring both plaintiff and her husband, in the amount of $500,000 per occurrence. (Complaint at Exh. B, Auto Policy). The Harrahs' uninsured/underinsured motorist coverage under their automobile liability insurance policy remained at $50,000 per person and $100,000 per occurrence.[2] (Id.).

---

[1] The umbrella policy requires that the insured's underlying automobile policy have liability split limits of at least $250,000 per person, $500,000 per occurrence, and $50,000 property damage, or at least $500,000 of single limit liability coverage. (See Complaint at Exh. C, Personal Catastrophe Liability Policy).

[2] The parties dispute whether, at the time plaintiff increased her automobile liability coverage to $500,000, defendant offered her the option to increase her uninsured and underinsured motorist coverage under that policy. Plaintiff claims that she received a document entitled "Important Notice" from defendant in connection with her acquisition of the $500,000 automobile liability policy which stated that the amounts of uninsured and underinsured motorist coverage would be increased to the same limits as the liability coverage if plaintiff failed to return the form within thirty days. (See Affidavit of Douglas Harrah at ¶ 11 and Exh. C, Important Notice). According to plaintiff, she did not return the form and believed that by not

On September 16, 1996, defendant issued umbrella policy number LJ1-288-642297-007, which provided plaintiff and her husband with liability coverage of $1,000,000 per occurrence, with no additional coverage being provided under the policy. (Complaint at Exh. C, Personal Catastrophe Liability Policy). It is undisputed that during the Harrahs' acquisition of the umbrella policy, Mr. Ennis did not offer the couple uninsured or underinsured motorist coverage in connection with that policy.

As a result of the injuries sustained by plaintiff in the July 16, 1997, accident, defendant tendered $500,000 to plaintiff, representing the policy limits under her automobile liability insurance policy. (Compl. ¶ 13). Plaintiff claims,

---

doing so her uninsured and underinsured motorist coverage was increased accordingly. Defendant has presented contrary evidence that the "Important Notice" was not mailed to plaintiff until September 5, 1997, being in conjunction, it appears, with the deletion of the 1996 Ford Contour totaled in the July 16, 1997, accident, and the addition of a 1989 Oldsmobile, as insured vehicles under the policy, and well after her purchase of the $500,000 automobile liability policy. (See Defendant's Supplemental Response to Plaintiff's Motion for Summary Judgment at Exh. 2, Second Affidavit of Dennis Keneavy at ¶ 3; see also Id. at Exh. A, Log Sheet). Defendant further contends that plaintiff told David Ennis at the time the increased policy was issued September 14, 1996, that she did not wish to increase the limits of her uninsured and underinsured motorist coverage in connection with the $500,000 automobile liability policy. (Defendant's Response to Plaintiff's Motion for Summary Judgment at Exh. 1, Affidavit of David Ennis at ¶ 5).

however, that she suffered damages in excess of the limits of that policy and seeks an additional $1,000,000 in damages from defendant by virtue of the umbrella policy.

Defendant has denied plaintiff's claim under the umbrella policy on two grounds. First, defendant argues that the umbrella policy excludes bodily injury coverage for claims arising out of injuries to named insureds.[3] Second, defendant maintains that no underinsured motorist coverage exists with respect to plaintiff's umbrella policy.

Plaintiff filed suit against defendant in the Circuit Court of Putnam County, West Virginia, on November 3, 1997, seeking a declaration that the umbrella policy provides bodily injury coverage to plaintiff, or, in the alternative, that the umbrella policy provides underinsured motorist coverage to plaintiff. Plaintiff's action was subsequently removed by defendant to this court on December 30, 1997. On April 2, 1998,

---

[3] Section II of the umbrella policy, entitled "Coverage - Personal Excess Liability," excludes from coverage "personal injury to any insured." (See Complaint at Exh. C, Personal Catastrophe Liability Policy, Section II, paragraph (h)). A "personal injury" is defined to include "bodily injury and sickness or death. . . ." (See Id. at Section I, paragraph (5)).

plaintiff filed a motion for summary judgment on these issues. Plaintiff contends that the exclusion relied upon by defendant in denying plaintiff's claim for bodily injury coverage under the umbrella policy is void and unenforceable as a matter of law. Plaintiff further contends that defendant was required to offer underinsured motorist coverage equal to its $1,000,000 umbrella liability limit and that defendant's failure to make such an offer to plaintiff necessitates reformation of the umbrella policy to include $1,000,000 in underinsured motorist coverage.

Defendant argues that its exclusion of bodily injury coverage to named insureds is valid and enforceable. In addition, defendant maintains that West Virginia law does not require an insurer to offer underinsured motorist coverage in connection with the issuance of an umbrella policy inasmuch as an umbrella policy is not a motor vehicle liability policy within the meaning of the West Virginia Motor Vehicle Safety Responsibility Law, W. Va. Code § 17D-1-1 et seq. Based upon these assertions, defendant contends that plaintiff is not entitled to recover damages under the umbrella policy in connection with the injuries she sustained in the July 16, 1997, accident.

## II. Motion for Summary Judgment

### A. Summary Judgment Standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If a party fails to establish an essential element of the cause of action, the opposing party is entitled to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). That is, a defendant satisfies its requirement as a matter of law by demonstrating that there is an absence of evidence to support the plaintiff's claims. Cray Communications, Inc. v. Novatel Computer Sys., Inc., 33 F.3d 390, 393-94 (4th Cir. 1994), cert. denied, 115 S. Ct. 1254 (1995). A defendant is also entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the plaintiff. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is not appropriate if the evidence is sufficient for a reasonable jury to return a verdict in favor of the plaintiff. Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn from them are in dispute. Overstreet v. Kentucky Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

In reviewing the evidence, a court must neither resolve disputed facts or weigh the evidence, Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), nor make determinations of credibility, Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

B. Exclusion of Bodily Injury Coverage

It is well-settled in West Virginia that "[w]here provisions of an insurance policy are plain and unambiguous and where such provisions are not contrary to a statute, regulation or public policy, the provisions will be applied and not construed." Rich v. Allstate Ins. Co., 445 S.E.2d 249, 251 (W. Va. 1994) (quoting Shamblin v. Nationwide Mut. Ins. Co., 332 S.E.2d 639, 642 (W. Va. 1985)); Farmers' & Merchants' Bank v. Balboa Ins. Co., 299 S.E.2d 1 (W. Va. 1982); Tynes v. Supreme Life Ins. Co., 209 S.E.2d 567 (W. Va. 1974).

The umbrella policy issued by defendant contains the following provision:

> II. COVERAGE - PERSONAL EXCESS LIABILITY
>
> We will pay all sums in excess of the retained limit of liability for damages because of personal injury or property damage to which this policy applies and for which the insured is legally liable.
>
> EXCLUSIONS
>
> * * *
>
> This policy . . . does not apply to:
>
> h. personal injury to any insured.

(See Complaint at Exh. C, Personal Catastrophe Liability Policy, Section II, para. (h)).

An insured is defined within the umbrella policy as "[the named insured] . . . and residents of your household . . . that are related to you by blood, marriage or adoption. . . ." (See Id. at Section I, para. (3)). In this case, plaintiff was the named insured on the declarations page attached to the umbrella policy. (See Id. at Declarations Page).

Plaintiff maintains that the exclusion is invalid and unenforceable as being contrary to both the statutory law and the public policy of the State of West Virginia. Defendant argues, however, that the subject exclusion is clear and unambiguous, does not contravene either statutory law or public policy, and operates as a matter of law to defeat bodily injury coverage to plaintiff.

It is clear that plaintiff is listed as the named insured under the umbrella policy and that the umbrella policy excludes coverage for personal injuries sustained by named insureds under the policy. Therefore, the umbrella policy unmistakably excludes plaintiff from coverage for personal

injuries suffered by her in the July 16, 1997, accident. Consequently, the court must apply the policy language and find that plaintiff is not entitled to bodily injury coverage under the umbrella policy unless it can be shown that the exclusion is contrary to either West Virginia statutory law or public policy. See Rich, 445 S.E.2d at 251; Shamblin, 332 S.E.2d at 642.

1. West Virginia Code § 33-6-29(a)

Plaintiff first argues that the exclusion here violates West Virginia's guest passenger statute, contained at West Virginia Code § 33-6-29(a), which provides, in pertinent part, that:

> An insurer shall not issue any policy of bodily injury or property damage liability insurance which excludes coverage to the owner or operator of a motor vehicle on account of bodily injury or property damage to any guest or invitee who is a passenger in such motor vehicle.

W. Va. Code § 33-6-29(a) (1996).

Relying on this section, plaintiff maintains that defendant may not restrict availability of bodily injury coverage to an insured person who is injured while riding as a passenger

in a vehicle being driven by another insured person at the time of the accident. Under West Virginia law, however, the insured owner of a vehicle occupying the passenger seat of a vehicle at the time of an accident is not a "guest passenger" within the purview of § 33-6-29. Dairyland Ins. Co. v. East, 425 S.E.2d 257, 263 (W. Va. 1992). Consequently, the court does not find § 33-6-29(a) to be applicable under the circumstances here.

2. West Virginia Code § 33-6-31(a)

Plaintiff next argues that the exclusion violates West Virginia Code § 33-6-31(a) which provides, in pertinent part, that:

> No policy or contract of bodily injury liability insurance, or of property damage liability insurance, covering liability arising from the ownership, maintenance or use of any motor vehicle, shall be issued or delivered in this state to the owner of such vehicle . . . unless it shall contain a provision insuring the named insured and any other person, except a bailee for hire and any persons specifically excluded by any restrictive endorsement attached to the policy, responsible for the use of or using the motor vehicle with the consent, expressed or implied, of the named insured or his or her spouse against liability for death or bodily injury sustained or loss or damage occasioned within the coverage of the policy or contract as a

> result of the negligence in the operation or use of such vehicle by the named insured or by such person . . . Notwithstanding any other provision of this code, if the owner of a policy receives a notice of cancellation pursuant to § 33-6A-1 et seq. . . . and the reason for the cancellation is a violation of law by a person insured under the policy, said owner may by restrictive endorsement specifically exclude the person who violated the law and the restrictive endorsement shall be effective in regard to the total liability coverage provided in the policy . . . , but nothing in such restrictive endorsement shall be construed to abrogate the "family purpose doctrine."

W. Va. Code § 33-6-31(a) (Supp. 2000).

According to plaintiff, the umbrella policy violates the foregoing statute for two reasons. First, plaintiff contends that the named insured exclusion violates the statute inasmuch as it abrogates the family purpose doctrine. Second, plaintiff argues that the exclusion violates the statute by precluding recovery by plaintiff of at least the mandated minimum limits of bodily injury coverage required by West Virginia Code § 17D-4-2.[4]

[4] West Virginia Code § 17D-4-2 provides for mandatory liability limits of $20,000 bodily injury for one person, $40,000 bodily injury for two or more persons, and $10,000 property damage minimum coverage requirements. W. Va. Code § 17D-4-2 (1996). As discussed more particularly herein, see *infra* 19-20, the West Virginia Supreme Court of Appeals has consistently held that insurance exclusions similar to the one at issue in this

Defendant argues that § 33-6-31(a) is applicable only to motor vehicle liability policies and not umbrella policies such as the one at issue in this case. Accordingly, defendant claims that the exclusion is valid and enforceable as to the face amount of the policy and not just those amounts above the mandatory minimum limits of liability coverage required by § 17D-4-2. Defendant further contends that the exclusion does not violate the family purpose doctrine.

The court agrees with defendant that the family purpose doctrine is not implicated under the circumstances here. The family purpose doctrine was explained by the West Virginia Supreme Court of Appeals in Freeland v. Freeland, 162 S.E.2d 922, 925 (W. Va. 1968) as follows:

> Where one purchases and maintains an automobile for the comfort, convenience, pleasure, entertainment and recreation of his family, any member thereof operating the automobile will be regarded as an agent or servant of the owner, and such owner will be held liable in damages for injuries sustained by a third person by reason of the negligent operation of the vehicle by such agent or servant.

---

case are invalid and unenforceable up to the limits of financial responsibility required by § 17D-4-2.

It is clear from this explanation that the family purpose doctrine is a theory employed by the court to extend insurance coverage to those situations where a negligent driver, otherwise not covered by the family insurance policy, injures a third party while operating the family car. In other words, the negligence of the unisured driver is imputed to the insured family car owner. Under the facts of this case, the family purpose doctrine is not applicable.

The court must determine whether West Virginia Code § 33-6-31(a) is applicable to the umbrella policy at issue in this case. The statute expressly applies to "polic[ies] or contract[s] of bodily injury liability insurance . . . covering liability arising from the ownership, maintenance or use of any motor vehicle. . . ." W. Va. Code § 33-6-31(a) (Supp. 1999).

The umbrella policy here contains the following provision:

> II. Coverage - Personal Excess Liability
>
> We will pay all sums in excess of the retained limit and up to our limit of liability for damages because of personal injury or property damage to which this

> policy applies and for which the insured is legally liable.
>
> EXCLUSIONS
>
> This policy does not apply to personal injury or property damage:
>
> * * *
>
> e. arising out of the ownership, maintenance, use, loading, or unloading of a motor vehicle or watercraft owned, hired or rented by any insured, unless the liability is covered by an underlying policy or by other valid and collectible insurance.

(See Complaint at Exh. C, Personal Catastrophe Liability Policy, Section II, para. (e)).

According to plaintiff, the umbrella policy clearly falls within the realm of § 33-6-31(a) inasmuch as it is a contract of insurance which covers personal injury, defined under the policy to include bodily injury, arising out of the ownership, maintenance, use, loading, or unloading of a motor vehicle.

Defendant contends, however, that § 33-6-31(a) is entitled, in part, "Motor Vehicle Policy," and therefore, the Legislature intended, based upon the title of that section, to limit its scope to "motor vehicle liability policies" as defined in § 17D-4-12(a).[5] Accordingly, defendant claims that the exclusion here is valid and enforceable and prohibits plaintiff from recovering any amount under the policy, including the mandatory minimum liability coverage limits set forth in § 17D-4-2.

In support of its argument, defendant cites to two published opinions, Electric Ins. Co. v. Rubin, 32 F.3d 814 (3d Cir. 1994) and Weitz v. Allstate Ins. Co., 642 A.2d 1040 (N.J. Super. Ct. 1994), for the proposition that an umbrella policy may completely exclude a named insured from coverage even where such an exclusion would be unenforceable if it were contained in a motor vehicle liability policy. Although the courts in Rubin and Weitz upheld a named insured exclusion contained within an

---

[5] West Virginia Code § 17D-4-12(a) defines a "motor vehicle liability policy" as an "'owner's policy' or an 'operator's policy' of liability insurance." W. Va. Code § 17D-4-12(a) (1996).

umbrella policy similar to the one at issue here, those cases are readily distinguishable from this case.

It is seen that the statutory schemes under which Rubin and Weitz were decided differ from that in West Virginia. In those cases, the statutes relied upon by the courts were specifically limited in scope to motor vehicle liability policies. Such is not the case here. West Virginia Code § 33-6-31(a) expressly applies to any "policy or contract of bodily injury liability insurance, or of property damage liability insurance, covering liability arising from the ownership, maintenance or use of any motor vehicle." W. Va. Code § 33-6-31(a) (Supp. 1999). It does not apply solely to motor vehicle liability policies as do the Pennsylvania and New Jersey statutes applicable in Rubin and Weitz. Thus, notwithstanding the fact that § 33-6-31(a) is entitled, in part, "Motor Vehicle Policy," the court is unable to accept defendant's position and read the statute as excluding an umbrella policy, such as the one here, which provides coverage for injuries arising out of the ownership, maintenance, or use of a motor vehicle.

Having found that the umbrella policy is one which falls within the scope of § 33-6-31(a), the court must now determine whether the exclusion contained within the umbrella policy, characterized by plaintiff as a household exclusion, precludes her from recovering entirely under the policy or precludes her from recovering only those amounts above the mandatory minimum liability limits required by § 17D-4-2.

It is clear that § 33-6-31(a) allows an insurer to issue a policy which excludes from coverage any person specifically named in a restrictive endorsement. The West Virginia Supreme Court of Appeals, in construing § 33-6-31(a), has consistently held that insurance exclusions similar to the one at issue in this case are invalid and unforceable up to the limits of financial responsibility required by § 17D-4-2. Above those mandatory minimum limits, however, the court has held such coverage exclusions to be valid and enforceable. See, e.g. Dairyland Ins. Co. v. East, 425 S.E.2d 257 (W. Va. 1992) (holding that a named insured exclusion in a motor vehicle liability policy was invalid with respect to the minimum coverage amounts required by § 17D-4-2 but valid as to amounts above the mandatory minimum limits); Ward v. Baker, 425 S.E.2d 245 (W. Va. 1992)

(holding that named driver exclusion in a motor vehicle liability policy had no force or effect up to the limits of financial responsibility required by § 17D-4-2 but was valid under § 33-6-31(a) for amounts above those mandatory limits); Jones v. Motorists Mut. Ins. Co., 356 S.E.2d 634 (W. Va. 1987) (holding that named driver exclusion was unenforceable up to the limits of the financial responsibility embodied in § 17D-4-2 but enforceable for all amounts above the statutorily required minimum levels).

Based upon the foregoing, the court finds that the exclusion in the umbrella policy has no force or effect up to the limits of financial responsibility required by West Virginia Code § 17D-4-2. However, above those mandatory minimums, the exclusion is valid and enforceable under West Virginia Code § 33-6-31(a).[6]

---

[6] The court finds this to be the case notwithstanding plaintiff's claim that the exclusion is a "household" exclusion as opposed to a "named insured" exclusion. Plaintiff attempts to distinguish the exclusion here from the exclusion considered by the West Virginia Supreme Court of Appeals in Dairyland Ins. Co. v. East, 425 S.E.2d 257 (W. Va. 1992). In Dairyland, the motor vehicle liability policy contained the following exclusion: "The liability insurance provided by this policy doesn't apply to injuries to the person named on the declarations page" or "to the husband or wife of that person if they are living in the same household." 425 S.E.2d at 259. The court characterized that

3. Public Policy

Plaintiff's final contention is that the court should find the exclusion to be invalid and unenforceable inasmuch as plaintiff claims that it violates the public policy of the State of West Virginia that favors full compensation by an insured.

The court agrees with plaintiff to the extent that it finds that defendant may not exclude plaintiff from bodily injury coverage up to the mandatory minimum limits of coverage required by § 17D-4-2. The court is unable to conclude, however, that enforcement of the exclusion as to amounts above those mandatory

---

exclusion as a "named insured" exclusion and invalidated it up to the mandatory minimum limits of liability coverage required by § 17D-4-2. In a footnote, the court recognized that there is a distinction between a "household" exclusion clause, which typically excludes coverage to the named insured as well as any person related to the named insured who resides in the household of the named insured, and a "named insured" exclusion. Id. at 261 n.4. According to the court, its "reference to this concept in no way indicates that [it] would necessarily limit the coverage available to the statutory minimum if such a clause were at issue here." Id. Relying on the quoted language, plaintiff claims that the West Virginia Supreme Court of Appeals has implicitly held that a household exclusion clause is invalid with respect to the full amount of the policy and not just with respect to those amounts below the statutory minimums. The passage relied upon by plaintiff is merely dicta. In any event, the exclusion here is one similar in form to the exclusion characterized by the court in Dairyland as a named insured exclusion and upheld by the court as to all amounts above the mandatory minimums.

minimums violates public policy. The West Virginia Legislature intended Chapter 17D of the West Virginia Code, commonly referred to as the West Virginia Motor Vehicle Safety Responsibility Law, to provide a minimum level of financial security to both named insureds and third parties who might suffer bodily injury or property damage as a result of the negligence of others. See Dairyland, 425 S.E.2d at 261; Jones, 356 S.E.2d at 637. Beyond the mandatory minimum coverage requirements, however, the Legislature, through its passage of § 33-6-31(a), intended to allow an insurer and an insured to agree to coverage exclusions. See Jones, 356 S.E.2d at 637.

This intent is further evidenced by § 33-6-31(k) which provides that "[n]othing contained herein shall prevent any insurer . . . from incorporating in such terms, conditions and exclusions as may be consistent with the premium charged," see W. Va. Code § 33-6-31(k) (Supp. 1999), and by the West Virginia Supreme Court of Appeals' acceptance of the right of insurance companies to incorporate exclusions in their policies. See, e.g., Mitchell v. Broadnax, No. 25539 (W. Va. July 16, 1999) ("Insurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the

premium charged, so long as any such exclusions do not conflict with the spirit and intent of [§ 33-6-31].”); Deel v. Sweeney, 383 S.E.2d 92, Syl. Pt. 3 (W. Va. 1989) (same). Thus, it cannot be said that the exclusion here, as to all amounts above the mandatory minimum liability limits, is contrary to the public policy embodied within the West Virginia Motor Vehicle Safety Responsiblity Law.

C. Offer of Underinsured Motorist Coverage in Connection with Issuance of Umbrella Policy

The court is also called upon to determine whether § 33-6-31(b) required defendant to offer plaintiff up to $1,000,000 of underinsured motorist coverage in connection with the issuance of the umbrella policy. Section 33-6-31(b) of the West Virginia Code provides, in pertinent part, that:

> Nor shall any such policy or contract [of bodily injury liability insurance . . . covering liability arising from the ownership, maintenance or use of any motor vehicle,] be so issued or delivered unless it shall contain an endorsement or provision undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than the requirements of [§ 17D-4-2] of this code, as amended

> from time to time . . . Provided, . . . That such policy or contract shall provide an option to the insured . . . to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than the limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without setoff against the insured's policy or any other policy. . . .

W. Va. Code § 33-6-31(b) (Supp. 2000).

Plaintiff argues that defendant was required by § 33-6-31(b) to offer her the option to purchase up to $1,000,000 of underinsured motorist coverage in connection with the sale of the umbrella policy and that such coverage is included in the policy by operation of law inasmuch as defendant failed to make any offer of underinsured motorist coverage to plaintiff.

As noted previously, defendant does not dispute that it did not offer plaintiff the option of purchasing $1,000,000 of underinsured motorist coverage in connection with her purchase of the umbrella policy. However, defendant advances the same argument with respect to plaintiff's claim for underinsured motorist coverage as it does with respect to plaintiff's claim

for bodily injury coverage -- namely, that § 33-6-31(b) applies only to motor vehicle liability policies and not umbrella policies and therefore underinsured motorist coverage need not be offered in connection with the issuance of an umbrella policy.

Defendant urges the court to interpret § 33-6-31(b) as not imposing an obligation on an insurer to offer underinsurance coverage on umbrella policies, arguing that this is what the majority of jurisdictions have decided. The West Virginia Supreme Court of Appeals has not addressed this issue and the decisions from other jurisdictions are divided. Some hold that an umbrella policy must offer underinsured motorist coverage, see, e.g., United Nat'l Ins. Co. v. DePrizio, 705 N.E.2d 455 (Ind. 1999); Estate of Delmue v. Allstate Ins. Co., 936 P.2d 326 (Nev. 1997); Isenhour v. Universal Underwriters Ins. Co., 461 S.E.2d 317 (N.C. 1995); Ormsbee v. Allstate Ins. Co., 859 P.2d 732 (Ariz. 1993); Bartee v. R.T.C. Transp., Inc., 781 P.2d 1084 (Kan. 1989); Cincinnati Ins. Co. Siemens, 474 N.E.2d 655 (Ohio 1984); Southern Am. Ins. Co. v. Dobson, 441 So.2d 1185 (La. 1983); Aetna Cas. & Sur. Co. v. Green, 327 So.2d 65 (Fla. Dist. Ct. App. 1976), while others hold that an umbrella policy need not offer underinsured motorist coverage, see, e.g., Schmitt v.

American Family Mut. Ins. Co., 161 F.3d 1115 (7th Cir. 1998)[7]; O'Hanlon v. Hartford Accident & Indem. Co., 639 F.2d 1019 (3d Cir. 1981)(applying Delaware law); Archunde v. Inter. Surplus Lines Ins., 905 P.2d 1128 (N.M. 1995); Popham v. State Farm Ins. Co., 634 A.2d 28 (Md. 1993); MacKenzie v. Empire Ins. Co., 782 P.2d 1063 (Wash. 1989); Cincinnati Ins. Co. v. Miller, 546 N.E.2d 700 (Ill. App. Ct. 1989); Moser v. Liberty Mut. Ins. Co., 731 P.2d 406 (Okla. 1986); Continental Ins. Co. v. Howe, 488 So.2d 917 (Fla. Dist. Ct. App. 1986) (applying Rhode Island law); Matarasso v. Continental Cas. Co., 440 N.Y.S.2d 40 (N.Y. App. Div. 1981); Trinity Universal Ins. Co. v. Metzger, 360 So.2d 960 (Ala. 1978).

The key to deciding this issue lies in the language of the West Virginia statute. As noted previously, § 33-6-31(b)

---

[7] In Schmitt, the Seventh Circuit was faced with the issue of whether Indiana treats an umbrella policy as a motor vehicle liability policy for purposes of the Indiana underinsured motorist statute. The Seventh Circuit answered this question in the negative, predicting that the Indiana Supreme Court would interpret the Indiana statute as excluding umbrella policies. Schmitt was decided on December 3, 1998. Thereafter, on February 3, 1999, the Indiana Supreme Court decided the case of United Nat'l Ins. Co. v. DePrizio, 705 N.E.2d 455, in which the court held that Indiana's underinsured motorist statute requires an umbrella policy that covers automobile liability claims to include underinsured motorist coverage.

provides that no policy or contract of bodily injury liability insurance covering liability arising from the ownership, maintenance or use of any motor vehicle shall be issued or delivered unless it provides an option to the insured to purchase underinsured motorist coverage in an amount up to the limits of bodily injury liability insurance purchased by the insured in a liability policy. W. Va. Code § 33-6-31(b) (Supp. 2000). The statute affords no distinction between automobile liability insurance policies and umbrella policies. Had the Legislature intended to exclude umbrella policies from the statutory application, it could have done so. Thus, the court is of the view that "any such policy or contract" of bodily injury liability insurance covering liability arising from the ownership, maintenance, or use of any motor vehicle means any kind of policy, including an umbrella policy, that covers liability for bodily injuries arising out of the ownership, maintenance, or use of a motor vehicle. The West Virginia Supreme Court has traditionally held that "[w]here the provisions of an insurance policy are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Ward v. Baker, 425 S.E.2d 245, 251 (W. Va. 1992) (quoting Keffer v.

Prudential Ins. Co., 172 S.E.2d 714, Syl. (W. Va. 1970)). Thus, under the provisions of the West Virginia statute, there is no room for statutory construction. Notwithstanding defendant's reliance on cases which have held otherwise, the West Virginia underinsured motorist statute differs from those of other jurisdicitons in important particulars and therefore cannot be governed by other state statutes which are distinguishable.

Section 33-6-31(b) says that an underinsurance option shall be offered, and this language "must be afforded a mandatory connotation." Bias v. Nationwide Mut. Ins. Co., 365 S.E.2d 789, 791 (W. Va. 1987). Where an offer of optional coverage is required by statute, "the insurer has the burden of proving that an effective offer was made and that any rejection of said offer by the insured was knowing and informed." Id. The insurer's offer must be made in a commercially reasonable manner, so as to provide the insured with adequate information to make an intelligent decision. Id. When an insurer is required by statute to offer optional coverage, such coverage "is included in the policy by operation of law when the insurer fails to prove an effective offer and a knowing and intelligent rejection of the coverage by the insured." Id. (citing Farm Mut. Auto. Ins. Co. v. Wannamaker, 354 S.E.2d 555 (S.C. 1987)). When an insurer

fails to prove an effective offer and a knowing and intelligent waiver by the insured, the insurer must provide the insured with coverage equal to the amount required to be offered under the statute. Cox v. Amick, 466 S.E.2d 459, 465 (W. Va. 1995); Riffle v. State Farm Mut. Auto. Ins. Co., 410 S.E.2d 413, 414 (W. Va. 1991). Stated differently, if the insurance company fails to make a proper offer, then underinsured motorist coverage in an amount equal to the level of liability coverage is presumed, as a matter of law, to be included in the policy. Bias, 365 S.E.2d at 791.

Defendant advances two additional arguments that plaintiff is not entitled to $1,000,000 of underinsured motorist coverage, neither of which has merit. First, defendant contends that even if it had offered plaintiff the option to purchase $1,000,000 of underinsured motorist coverage in connection with her purchase of the umbrella policy, plaintiff's purchase of less than the same limits of uninsured and underinsured motorist coverage in connection with her acquisition of the underlying automobile insurance policy, see *supra* n.2, shows that she would not have elected to purchase $1,000,000 in underinsured motorist coverage on the umbrella policy. Therefore, defendant maintains

that it would be improper for the court to find, as a matter of law, that $1,000,000 of underinsured coverage is included in plaintiff's umbrella policy. Defendant cites to no legal authority in support of this argument. The court's reading of the West Virginia Supreme Court's opinions in <u>Bias</u>, <u>Cox</u> and <u>Riffle</u> indicates that when no offer of optional underinsured motorist coverage is made by an insurer, by operation of law, the entire amount of the optional coverage that should have been offered must be included in the policy. Thus, an inquiry into whether or not plaintiff would have actually elected to purchase $1,000,000 of underinsured motorist coverage is irrelevant to deciding this issue.

Defendant also claims that plaintiff is not entitled to $1,000,000 of underinsured motorist coverage inasmuch as her automobile liability policy excludes from the definition of an underinsured motor vehicle "any vehicle . . . owned by or furnished or available for the regular use of you or any 'family member.'" (<u>See</u> Defendant's Response to Plaintiff's Motion for Summary Judgment at Exh. 3, Endorsement). This exclusion is contained within endorsement number PP 04 53 12 94, entitled "Uninsured/Underinsured Motorists Coverage - West Virginia."

(Id.). As can be seen from the declaration pages attached to both of plaintiff's policies, this endorsement is specifically referred to only in the declarations page attached to plaintiff's automobile liability policy number A02-288-404915-007. (See Complaint at Exh. B, Declarations Page). It is not referenced in the declarations page attached to plaintiff's umbrella policy number LJ1-288-642299-007. (See Id. at Exh. C, Declarations Page). Thus, the umbrella policy does not contain such an endorsement. Accordingly, the court is unable to find that plaintiff's vehicle is excluded from the definition of an underinsured motor vehicle within the umbrella policy.

Based upon the foregoing, the court finds that defendant was obligated to offer plaintiff underinsured motorist coverage in an amount equal to $1,000,000. Having failed to do so, the court finds that $1,000,000 of underinsured motorist coverage is included in the umbrella policy by operation of law.

## III. Motion for Sanctions

Plaintiff also filed a motion for sanctions on November 18, 1998, seeking sanctions against defendant as a result of defendant's filing of two documents characterized by plaintiff as

"fugitive documents." These documents were filed as attachments to defendant's supplemental response to plaintiff's motion for summary judgment, filed October 30, 1998, and defendant's second supplemental response to plaintiff's motion for summary judgment, filed November 12, 1998, both of which were filed after the September 25, 1998, deadline for the filing of responsive briefs set in the time frame order entered in this case on March 23, 1998. The two documents complained of by plaintiff include the "Second Affidavit of Dennis Keneavy" and the "Log Sheet," both submitted by defendant in support of its contention that plaintiff would not have purchased $1,000,000 of underinsurance motorist coverage even if the same had been offered to her by defendant.[8]

---

[8] As discussed at <u>supra</u> n.2, plaintiff contends that prior to the July 16, 1997, accident, she received an "Important Notice" from defendant offering her the option of increasing the uninsured and underinsured coverage on her automobile liability policy. According to the offer, defendant would automatically increase the limits of her uninsured and underinsured coverage if plaintiff took no action within thirty days. If plaintiff did not want the additional coverage, she was to contact her agent. Plaintiff claims she took no action, thus evidencing her desire to increase her limits of coverage. In his second affidavit, Keneavy states that the "Important Notice" relied upon by plaintiff was mailed to her on September 5, 1997, well after the July 16, 1997, accident. A handwritten notation on the Log Sheet of "9-5" refers, according to Keneavy, to the date the "Important Notice" was mailed to plaintiff.

Having previously determined that a factual inquiry concerning whether or not plaintiff would have elected to purchase $1,000,000 of underinsurance coverage is unnecessary, the court need not consider either the affidavit of Mr. Keneavy or the log sheet in order to resolve this issue. Finding that the two documents complained of by plaintiff do not warrant consideration, the court concludes that plaintiff is not entitled to recover sanctions against defendant as a result of its late filing of these documents.

## IV. Conclusion

For the stated reasons, it is ORDERED that plaintiff's motion for summary judgment be, and it hereby is, granted, to the extent that the court finds that the umbrella policy provides plaintiff with bodily injury coverage equal to the mandatory minimum liability limits required by § 17D-4-2 and underinsured motorist coverage equal to the amount of optional coverage required to be offered by defendant in accordance with § 33-6-31(b). It is further ORDERED that plaintiff's motion for summary judgment is otherwise denied. It is further ORDERED that plaintiff's motion for sanctions be, and it hereby is, denied.

The Clerk is directed to forward copies of this order to all counsel of record.

DATED: September 29, 2000

JOHN T. COPENHAVER, JR.
United States District Judge